UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

YASMYNE BRIANNA EVELYN WALLACE,


                                      Plaintiff,

                                                                    DECISION AND ORDER

                                                                    14-CV-6367L


                v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,


                                      Defendant.

_____


                          **INTRODUCTION**

       Plaintiff, Yasmyne Brianna Evelyn Wallace ("plaintiff"), brings this action under 42

U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the

Commissioner") that she is not disabled under the Social Security Act, and therefore, is not

entitled to Social Security disability and supplemental security income benefits.

       Plaintiff initially applied for Social Security disability benefits on February 23, 2011,

listing a disability onset date of January 15, 2010.  (T. 20).[1]  Plaintiff's application was initially

denied.  Plaintiff requested a hearing, which was held November 6, 2012 before Administrative

Law Judge ("ALJ") Lawrence Levey.  ALJ Levey issued a decision dated December 18, 2012,

_____

[1]"T." refers to the transcript of the administrative record.

finding that plaintiff was not disabled. (T. 20-27). ALJ Levey's decision became the final

decision of the Commissioner when the Appeals Council denied plaintiff's request for review on

May 7, 2014. (T. 1-3). This action followed.

The plaintiff has moved, (Dkt. #8) and the Commissioner has cross-moved (Dkt. #11) for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. As

discussed below, the Commissioner's decision is reversed, and the matter is remanded for further

proceedings.

## DISCUSSION

### I. Standard for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a

claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful
> activity.' If he is, benefits are denied. If he is not engaged in such activity, the
> process moves to the second step, which decides whether the claimant's condition
> or impairment is 'severe'– i.e., one that significantly limits his physical or mental
> ability to do basic work activities. If the impairment is not severe, benefits are
> denied. If the impairment is severe, the third step determines whether the
> claimant's impairments meet or equal those set forth in the 'Listing of
> Impairments'. . . contained in subpart P, appendix 1, of the regulations. . . . If the
> claimant's impairments are not listed, the process moves to the fourth step, which
> assesses the individual's 'residual functional capacity' (RFC); this assessment
> measures the claimant's capacity to engage in basic work activities. If the
> claimant's RFC permits him to perform his prior work, benefits are denied. If the
> claimant is not capable of doing his past work, a decision is made under the fifth
> and final step whether, in light of his RFC, age, education, and work experience,
> he has the capacity to perform other work. If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted).

It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis.  At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

## II.     The ALJ's Decision

Plaintiff was born October 11, 1989 and is presently twenty-five years old.  She has a sixth-grade special education and no past relevant work.  (T. 67).

At the first step, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her application date of February 23, 2011, and in fact, that plaintiff's record of work activity was "virtually non-existent."   At steps two and three, the ALJ concluded that plaintiff had severe impairments, consisting of asthma, "possible" borderline intellectual functioning, affective disorder, anxiety disorder, and polysubstance abuse, which did not meet or equal a listed impairment.  (T. 22).  The ALJ specifically applied the "special technique" for mental impairments, finding that plaintiff was mildly restricted in activities of daily living, moderately restricted in social functioning and in concentration, persistence and pace, and had experienced no episodes of decompensation.

At step four, the ALJ concluded that plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: avoiding concentrated exposure to environmental irritants, limited to performing simple, routine and repetitive tasks, in

a work environment free of fast-paced production requirements, limited to simple work-related decisions, with few if any changes in the workplace, no personal interaction with the general public, and no more than occasional and non-intensive interpersonal interaction with coworkers and supervisors. (T. 24).

At step five, the ALJ considered testimony from vocational expert Peter Manzi, and concluded, based on plaintiff's age, education, and work experience, that plaintiff was not disabled, because she retained the RFC to perform work existing in significant numbers in the national economy, including the positions of laundry sorter, photocopy machine operator, and collator operator.

## III. Standards of Review

The Commissioner's decision that plaintiff in not disabled must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot not substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504 (quoting *Johnson*, 817 F.2d at 986).

## IV.  Plaintiff's Alleged Disability

Plaintiff argues that the ALJ erred in failing to properly evaluate her intellectual functioning, and improperly rejected, or failed to incorporate into his RFC findings, the opinions of consulting psychologist Dr. Christine Ransom.

Dr. Ransom examined plaintiff on June 6, 2011. She diagnosed plaintiff with moderate to marked panic disorder with agoraphobia, moderate to marked bipolar disorder with psychotic features, "probable" borderline intellectual capacity, asthma, and alcohol and marijuana dependence, currently in remission. (T. 624). Dr. Ransom opined that based on these diagnoses, plaintiff would have "moderate difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining a simple regular schedule and

learning simple new tasks." *Id.*  The ALJ chose to afford Dr. Ransom's opinion only "limited weight," in part because it was inconsistent with the other evidence of record concerning plaintiff's ability to perform simple tasks.

Because Dr. Ransom is a consulting physician (not entitled to controlling weight), and because her opinion is inconsistent with the other evidence of record concerning plaintiff's ability to perform simple tasks, I find that the ALJ's decision to grant it only limited weight was not improper.  Contrary evidence in the record includes a Global Assessment of Functioning ("GAF") test score of 69 (indicating no more than mild symptoms with less than moderate difficulties in social, occupational or educational functioning), plaintiff's self-reported daily activities (including the performance of simple tasks like doing laundry and occasional grocery shopping), and treatment notes from plaintiff's therapist, which reflect her belief that plaintiff can handle (albeit can *only* handle) "simple, clear material involving uncomplicated tasks."  (T. 90-91, 438, 538, 558, 578).  Accordingly, the ALJ's finding that plaintiff is capable of performing "simple, routine and repetitive tasks, in a work environment free of [fast] paced production requirements, involving only simple work related decisions," was supported by substantial evidence of record, and his decision not to credit Dr. Ransom's opinion to the extent that it suggested a greater level of limitation, was not improper.  (T. 24).

Although the Court concludes that substantial evidence of record supports the ALJ's findings with respect to plaintiff's RFC at Step 4, remand is necessary nevertheless, in order for a full and fair Step 3 determination to be made, concerning whether the requirements of Listing 12.05 ("Intellectual Disability") are met or equaled.  Consulting and examining psychologists noted that plaintiff's intellectual functioning appears to be in the "borderline" range (T. 388,

623), and the ALJ agreed that plaintiff, at the very least, had "possible borderline intellectual functioning." (T. 22). The precise extent of plaintiff's intellectual impairments, as expressed through I.Q. testing, could be determinative of her application for disability benefits at Step 3. For example, a borderline I.Q. "in the presence of other physical or mental disorders that impose additional and significant work-related [functional limitations] may support an equivalence determination," which could mandate a finding of disability under Listing 12.05(c). *See generally Taylor v. Colvin*, 2013 U.S. Dist. LEXIS 185447 at *35 (N.D.N.Y. 2013) (where plaintiff's I.Q. is in the borderline range and the ALJ failed to consider functional equivalence under Section 12.05, remand is appropriate).

While the record appears to establish plaintiff's "possible" or apparent borderline intellectual functioning, there is no evidence that plaintiff's I.Q. has ever been objectively assessed. The Court is mindful that in general, passing references in the record to a claimant's low intelligence do not trigger an ALJ's obligation to order intelligence testing, particularly where other evidence of record, such as the claimant's education, work history, and activities of daily living, does not suggest a severe cognitive impairment. *See e.g.*, *Crawford v. Astrue*, 2013 U.S. Dist. LEXIS 138219 at *66-*67 (W.D.N.Y. 2014) (remand for I.Q. testing is manifestly unnecessary, despite scattered references in the record to "mild mental retardation," where plaintiff graduated from high school, maintained semi-skilled employment, read widely and managed her own finances). However, the record here, which reflects plaintiff's significant educational difficulties (completing only a sixth grade special education, failing and repeating second grade, and failing seventh) and inability to perform common tasks like learning to drive or manage personal finances, does not undermine plaintiff's claim of limited intellectual

capacity, and could be interpreted as supporting it.  Because the plaintiff's intellectual capacity cannot be reasonably ascertained from the evidence of record, the matter is remanded for the limited purpose of further developing the record with regard to plaintiff's cognitive limitations, including the obtainment of I.Q. testing, so that the applicability of Listing 12.05 can be properly considered.  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, §12.05.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings (Dkt. #8) is granted, and the Commissioner's motion for judgment on the pleadings (Dkt. #11) is denied.  The final decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion, including the obtainment of I.Q. testing, and, if appropriate, consideration of whether plaintiff's impairments meet or equal the requirements of Listing 12.05.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      August 6, 2015.